UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


Theresa Goski,

   Plaintiff,

v.          Case No. 06-11631

Myriad Genetics, Inc.,     Honorable Sean F. Cox

   Defendant.
_____/

## OPINION & ORDER

 Plaintiff Theresa Gorski ("Plaintiff" or "Gorski") filed this age and sex discrimination

action against her former employer, Defendant Myriad Genetics, Inc. ("Defendant" or "Myriad"),

on March 3, 2006. Defendant then removed the matter to this Court on the basis of diversity

jurisdiction. The matter is currently before the Court on Defendant's Motion for Summary

Judgment, in which it seeks dismissal of Counts I and III of Plaintiff's complaint. The Court

heard oral argument on May 31, 2007. For the reasons set forth below, the Court shall **DENY**

Defendant's motion.

## BACKGROUND

 Myriad is a Utah-based biopharmaceutical company focused on the development of

healthcare products. One of its products is a genetic test for hereditary breast and ovarian cancer

(BRCAnalysis®). (PSMF[1] at ¶ 2).

---

  [1]In compliance with this Court' practice guidelines, the parties submitted statements of
undisputed material facts. The parties respective statements of material facts are referenced
herein as "PSMF."

Gorski worked for Myriad from July 2003, through August 2005 as an Account Executive (*i.e.*, a salesperson). (PSMF at ¶ 1; Def.'s Br. at 1). Prior to working at Myriad, Gorski had approximately 20 years of sales experience in the pharmaceutical industry, but had no specific experience in sales of genetic testing products. (PSMF at ¶ 7).

Christopher Ho ("Ho") was the decision-maker who hired Gorski and was also her immediate supervisor at Myriad. (PSMF at ¶¶ 3 & 5). Gorski's job at Myriad was to convince medical providers of the test's benefits and to sell the test to hospitals, doctors and genetic counselors. (PSMF at ¶ 6).

Gorski began her sales position with Myriad in July 2003. Ho acknowledged during his deposition that Gorski's sales numbers in her first year were good, that her revenue exceeded Myriad's goals, and that Gorski was number one in her sales region for fiscal year 2004. (Ho Dep. at 190).

A 2004 performance appraisal by Ho, dated May 17, 2004, gave Gorski an overall evaluation of "exceeds expectations" and stated that Gorski "had an outstanding sales year and is in the running for Presidents Club. This is especially impressive considering her stack ranking at the end of Q1 due to the insurance problems in Michigan." (Pl.'s Ex. G). Ho's comments also included "Outstanding performance!!" and "Phenomenal sales results! Presidents Club is within reach!" (*Id.*).[2]

---

[2] Although Ho's 2004 performance appraisals of Gorski were positive, Ho did voice some concerns with some areas of her performance and made suggestions for improvement. (*See e.g.*, Pl.'s Ex. G stating that her "boundless energy" was both a positive and a negative.).

Another 2004 performance appraisal[3] of Gorski by Ho stated:

> Terry's hire date was July 17, 2003. With training in corporate taking place in October 2003. The Detroit territory during the A1 04 Stack Ranking, ranked 71st in the nation out of 73 territories. (44% of product portfolio). With Terry's passion and commitment to the product line her rank went from 71st to 17th overall (April Numbers). In April Terry ranked 5th in the Nation for the Quarter. Terry's ability to get into an account and evaluate what is needed and win the respect of the clients is crucial to her success and momentum.

(Pl.'s Ex. E).

Ho nominated Gorski for Myriad's "rookie of the year award" after her first year with Myriad and explained that he felt that her revenue growth in bringing her territory from the bottom to the top was deserving of being recognized. (Ho Dep. at 190).

Ho completed another Performance Appraisal for Gorski on May 1, 2005. (Ex. A to Def.'s Reply Br.). The form appraisal report allowed the evaluator to provide a summary description of "exceeds expectations," "meets expectations" or "needs improvement." Ho's May 1, 2005 Performance Appraisal indicated a summary classification of "needs improvement." His classifications for her in every specific area listed (Franchise Mgt., Sales Skills, Business Acumen, Administrative Duties, Organizational Interactions, Area Leadership, and Personal Achievement), however, was "competency." With respect to sales results, the report described Gorski's year-to-date 136% percent of sales target as "solid overall revenue numbers." As to overall rank, Gorski was 45th (out of 80) which Ho described as "[d]isappointing given the fact that last year had a top 10 finish. Rank mostly due to failure to develop new customers & persuade folks to test Colaris patients." (*Id.*).

---

[3] The appraisal is not dated, but it appears to have been conducted at the end of Gorski's first year.

On May 20, 2005, Gorski was placed on a "corrective action" that stated in pertinent part:

> This memo is being created to document my concerns over your job performance. I have concerns in 2 critical areas; franchise management and new customer development. Although you have improved in your selling skills, you are not improving at a rate that is satisfactory and your current skill level is significantly below my expectations for an Account Executive with 2 years tenure. I believe these issue have led to the flat revenue growth in your territory for Q4 of FY04 to Q3 of FY05 the territory has grown 2.1%. This level of growth is unacceptable.

(Def.'s Ex. 1). The Corrective Action Memo outlined Ho's concerns regarding skills related to messaging and customer development and indicated that Ho would require Gorski to "produce at least 2 samples reported or in process over the next 60 days." (*Id.*). This meant that Gorski had to produce at least two new accounts, with each producing two samples, within the corrective action period.

After placing her on corrective action Ho scheduled three field travel visits to observe her progress and provide coaching. (PSMF at ¶ 24).

In his first Field Travel Report, dated May 31-June 2, 2005, Ho made various suggestions for improvement. The form report had sections that allowed the manager to choose one of the following descriptions as to the employee's skills in various areas: mastery, advanced, competency, needs improvement, could not evaluate. (Def.'s Ex. 3). In this report, Ho selected "competency" to indicate Gorski's skills as to all areas, with the exception of "Interventions" which he selected "Could not evaluate." In the Sales Results section, the Field Report showed Gorski's year to date sales were 135% of her target. (*Id.*).

In his second Field Travel Report, dated June 27-28, 2005, Ho noted progress in some areas. For example, Ho stated that "you have shown the ability at times to use the investigating questions that we discussed and engage a physician in a conversation about genetic testing. In

some of these discussions . . . you were definitely able to increase their enthusiasm surrounding genetic testing." (Ex. 4 to Def.'s Br.). Ho noted, however, that he wanted to see more consistency in using investigating questions during her sales calls. Ho noted that during the next field visits he would "measure your success subjectively by our field travel and objectively by the terms described in the corrective action and the developmental plan outlined in this report." In that same report, however, Ho increased the number of test reports that would be required of Gorski, from 2 to 6. (*Id.*). Ho did not select any of the overall descriptions for rating Gorski's skills in various areas. In the Sales Results section, the Field Report showed Gorski's year to date sales were 138% of her target. (*Id.*).

In his third Field Travel Report, dated July 11-12, 2005, Ho stated that Gorski was not "meeting expectations for an AE of [her] tenure" and expressed several criticisms. (Def.'s Ex. 5). Ho did not select any of the overall descriptions for rating Gorski's skills in various areas. In the Sales Results section, the Field Report showed Gorski's year to date sales were 138% of her target. (*Id.*).

Myriad states that Ho drafted and issued to Gorski a final corrective action field visit on August 17, 2005, which ended her employment. That report, however, was not submitted to the Court.

In any event, Gorski was ultimately terminated on or about August 17, 2005. Myriad contends that Ho "consulted with Mark Capone ("Capone"), Myriad's Vice President of Sales and Barbara Berry ("Berry"), Vice President of Human Resources" prior to Gorski's termination. (Def.'s Br. at 12). Capone testified that he is typically involved in discussions regarding salespersons before they are terminated. (Capone Dep. at 66-67).

For the year just prior to her termination, Gorski was ranked 54th out of Myriad's 80 sales representatives and had a sales revenue percentage of 124.4 percent of her target for the year. (Ho Dep. at 317-320). In other words, at the time of her termination, Gorski had exceeded the sales goal that Myriad had set for Gorski for the year by 24.4 percent. (*Id*.). Ho testified that Gorski would have been eligible for a merit increase and a bonus based upon her sales. (Ho Dep. at 319-21).[4]

Gorski filed suit against Myriad on March 3, 2006, and her complaint asserts the following claims: "Elliot Larsen Civil Rights Act (Age) (Disparate Treatment)" (Count I); "Elliott Larsen Civil Rights Act (Age) (Disparate Impact) (Count II); "Elliott Larsen Civil Rights Act (Gender) (Disparate Treatment)" (Count III); and "Elliott Larsen Civil Rights Act (Gender)(Disparate Impact)" (Count IV). Gorski, however, acknowledged at the May 31, 2007 hearing that her claims based on a disparate impact theory should be dismissed. (*See also* Pl.'s Response Br. at 1 n.1). Accordingly, Counts II and IV will be dismissed. Thus, only Counts I (alleging disparate treatment on the basis of age) and III (alleging disparate treatment on the basis of gender) remain. In the instant Motion for Summary Judgment, Myriad seeks summary judgment as to those two remaining claims.

---

[4]In 2005, Gorski's region was number one in the nation in terms of sales. (Gorski Dep. at 172). Although she exceeded Myriad's sales goals for her in 2005, Gorski acknowledges that she had flat sales for two quarters of 2005 and was at the bottom of her particular region, but that there were 24 other sales representatives below her in the stack rankings. (Gorski Dep. at 166-172).

<u>ANALYSIS</u>

Counts I and III of Gorski's complaint allege age and gender discrimination under Michigan's Elliot-Larsen Civil Rights Act ("the ELCRA").

At the summary judgment stage, a plaintiff must adduce either direct or circumstantial evidence to prevail on his discrimination claim. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). Here, Plaintiff does not contend that any direct evidence exists to support either age or gender discrimination. Thus, she must rely on circumstantial evidence.

Under the circumstantial evidence approach, a plaintiff must show the existence of facts which create an inference of discrimination under the familiar *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Both parties acknowledge that the *McDonnell Douglas* framework is applied to age discrimination claims brought under the ADEA and the ELCRA and that Plaintiff bears the burden of establishing a prima facie case.

To establish a prima facie case of age or gender discrimination, a plaintiff must establish that: 1) plaintiff belongs to a protected class; 2) plaintiff suffered an adverse employment action; 3) plaintiff was qualified for the position; 4) plaintiff was replaced by someone outside of the protected class, a similarly situated employee outside of the protected class was treated more favorably for the same or similar conducts, or the adverse action occurred under circumstances giving rise to an inference of unlawful discrimination. *Sniecinski v. Blue Cross & Blue Shield*, 469 Mich. 124 (2003); *Skrjanc v. Great Lkakes Power Service Co.*, 272 F.3d 309 (6th Cir. 2001).

Once a plaintiff establishes such a prima facie case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the Plaintiff's discharge. If the employer

articulates such a reason, then the Plaintiff has the burden of showing that the articulated reason is in reality a pretext to mask discrimination.  *Skrjanc, supra.*

Here, there is no dispute that Gorski belongs to the protected classes at issue (*i.e.*, she is female and over 40 years of age).  It is also undisputed that she suffered an adverse employment action (*i.e.*, her termination).  Thus, the first two elements of her prima facie case are established.  Myriad contends, however,  that Gorski cannot establish the third element (establishing that she was qualified for the position) or fourth element (establishing that she was replaced by someone outside of the protected class, treated differently than someone outside of the protected class, or terminated under circumstances giving rise to an inference of discrimination).  Myriad also contends that even if she could establish a prima facie case, Gorski cannot show that Myriad's legitimate, non-discriminatory reason is a pretextual.

1.   Third Element of Prima Facie Case:

In *Wexler*, the Sixth Circuit "explicitly set forth what is required for a plaintiff to satisfy the qualification prong of the prima facie test."  *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575 (6th Cir. 2003).  "At the prima facie stage, a court should focus on a plaintiff's *objective* qualifications to determine whether he or she is qualified for the relevant job."  *Id.* (emphasis in original).  "The prima facie burden of showing that a plaintiff is qualified can therefore be met by presenting credible evidence that his or her qualifications are at least equivalent to the minimum **objective criteria** required for employment in the relevant field.  Although the specific qualifications will vary depending on the job in question, the inquiry should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills."  *Id.*  (emphasis added).

Myriad contends that Gorski cannot establish that she was qualified for the position because Ho issued a corrective action to her and other documents show that Gorski's job performance was unsatisfactory. (Def.'s Exs. 1-5).

In response, Gorski contends that she has submitted more than sufficient evidence to establish that she was qualified for her sales position, including the following:

• She had almost 20 years experience in the pharmaceutical sales industry. (PSMF at ¶ 7).

• During her first year with Myriad, she brought her sales territory from 71st to 17th out of 73 sales territories. (Pl.'s Ex. E).

• In her second year (the year preceding her termination), she exceeded the sales goal that Myriad had set for her by 24.4 percent. (Ho Dep. at 317-20).

• Based on her sales during her second year, Gorski would have been eligible for a merit increase and a bonus had she not been terminated. (Ho Dep. at 318-21).

Gorski asserts that the above evidence is sufficient to meet the qualification prong of her prima facie case and relies on *Wexler, supra*, and on *Cicero v. Borg-Warner*, 280 F.3d 579 (6th Cir. 2002). Gorski notes that the court in *Cicero* explained that a court must evaluate whether a plaintiff has established his qualification independent of the employer's proffered nondiscriminatory reasons for discharge. She contends that the evidence she offers, especially when viewed independent of Myriad's reason for her discharge, is sufficient to meet the third element.

The Court agrees that Gorski has produced sufficient evidence for a reasonable jury to find that she was qualified for her position. *Cicero* instructs that the court must judge a plaintiff's qualifications independently of the reason the employer offers for firing the plaintiff. Here, Gorski has established that she had twenty years of related prior sales experience, and has

offered evidence to establish that she was successful in her sales efforts at Myriad during the two years that she worked there.

In 2004, Gorski received performance evaluations indicating that she was *exceeding* Ho's expectations and Ho's comments included "Outstanding performance!!" and "Phenomenal sales results! Presidents Club is within reach!"  Indeed, Ho nominated Gorski for the rookie of the year award as a result of her performance in 2004.

In 2005, although Gorski had flat sales for two quarters, she still exceeded the sales goal for the year that Myriad set for her by almost 25%.  Although Gorski's sales percentage was the lowest of her region, which was ranked number 1 in the nation that year, Gorski testified that 24 other Myriad sales representatives ranked below her.  Moreover, based on her sales performance in 2005, the year prior to her termination, Gorski would have been eligible for a merit increase and a bonus based on her sales.  In addition, in her 2005 Performance Appraisal Ho described Gorski as "competent" in every category listed.

The Court therefore concludes that, when viewed independently of Myriad's reason for her discharge, Gorski has produced sufficient evidence for a reasonable jury to find that she was qualified for her position.

2.      Final Element of Prima Facie Case:

The Court must next consider whether Gorski has established the final element of a prima facie case.  In order to do so, Gorski must establish that she was replaced by a person outside of the protected classes, that she was treated differently than similarly situated employees outside of the protected classes or that her termination arose under circumstances giving rise to an inference of unlawful discrimination.

Myriad asserts that Gorski cannot establish that her termination arose under circumstances giving rise to an inference of unlawful discrimination. Myriad appears to argue that Gorski is unable to do so because the "same-actor inference" should be applied here. In short, Myriad asserts that Ho made the decision to hire Gorski and also made the decision to fire her two years later, and the same-actor inference therefore applies such that an inference of a lack of discrimination is created. Myriad relies primarily on *Buhrmaster v. Overnite Transportation Co.*, 61 F.3d 461 (6th Cir. 1995) and *Town v. Michigan Bell Telephone Co.,* 455 Mich 688 (1997).

Gorski challenges Myriad's arguments regarding the same-actor inference on several grounds. First, she contends that sufficient evidence exists to allow a reasonable juror to conclude that Ho did not alone decide to terminate her. She contends that Myriad, in its response brief, acknowledges that Capone and Berry took part in the termination decision.

Second, she asserts that even if the jury concluded that Ho made the termination decision alone, the jury would be free to accept or reject the same-actor inference (*i.e.*, it is a permissive inference for the fact finder). She asserts that *Wexler* makes clear that the same-actor inference is not appropriate where, as here, a genuine issue of fact is otherwise raised in a summary judgment motion.

Gorski asserts that she has at least raised a genuine issue of material fact as to whether the fourth element is satisfied. She asserts that she was replaced by a 29-year old male. In addition, she submits other evidence to establish that her termination arose under circumstances giving rise to an inference of discrimination including:

- Prior to her termination, Ho made comments to her that she believes reflect a

discriminatory animus, such as asking her if her stay-at-home husband was going to get a job (Gorski Dep. at 334-35) and commenting that he had never coached "someone of her tenure." (Gorski Dep. at 229-30).

- Gorski was terminated despite having exceeded her annual objective sales goal set by Myriad by almost 25%.

- Ho changed the objective requirement for new accounts that he had set for Gorski midway through her corrective action period and Ho acknowledges that he has never done so before with respect to any other employees.[5]

- During the year that she was terminated, only three salespersons were terminated and all three of them were women over the age of 40. (Pl.'s Ex. S).

The Court concludes that Gorski has met the final element of a prima facie case of age and sex discrimination. At the May 31, 2007 hearing, Defense counsel acknowledged that Gorski was replaced by a 29 year-old male. Thus, Gorski has met the final element of a prima facie case by establishing that she was replaced by a person outside of both protected classes. Additionally, the Court also concludes the above evidence is sufficient to raise a genuine issue of material fact as to whether Gorski was terminated under circumstances giving rise to an inference of discrimination.

As to the same-actor inference, *Wexler* makes clear that it has no application in the context of this summary judgment motion. *See Wexler, supra*, at 573 (Rejecting "the idea that a mandatory inference must be applied in favor of a summary judgment movant whenever the claimant has been hired and fired by the same individual.")

Accordingly, the Court concludes that Gorski has established a prima facie case of age and sex discrimination.

---

[5]Gorski claims that she met the initial requirement that Ho imposed, while Ho claims that she did not.

3.      <u>Legitimate, Non-Discriminatory Reason</u>:

Once a plaintiff establishes such a prima facie case, the burden then shifts to the employer

to articulate a legitimate, nondiscriminatory reason for the Plaintiff's discharge.  Once a

defendant articulates a nondiscriminatory reason for the challenged action, the plaintiff bears the

burden to prove that the proffered explanation was a pretext for discrimination.  *Ercegovich v.*

*Goodyear Tire & Rubber Co.*, 154 F.3d 344, 354 (6th Cir. 1998).  In order to do so, the "plaintiff

must produce sufficient evidence from which the jury may reasonably reject the employer's

explanation."  *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994).

A plaintiff can refute the legitimate, nondiscriminatory reason that an employer offers to

justify an adverse employment action by showing that the proffered reason 1) had no basis in

fact, 2) did not actually motivate the defendant's challenged conduct, or 3) was insufficient to

warrant the challenged conduct.  *Wexler v. White Fine Furniture*, 317 F.3d 564, 576 (6th Cir.

2003); *Manzer*, 29 F.3d at 1084.  The first type of showing consists of evidence that the proffered

bases for the termination never happened *(i.e.*, that they are factually false).  With respect to the

second kind of showing, "the plaintiff argues that the sheer weight of the circumstantial evidence

of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or

coverup."  *Id*.  The third showing consists of evidence that other employees, particularly those

not in the protected class, were not fired even though they engaged in similar conduct.  *Id.*

Here, Myriad asserts that its legitimate non-discriminatory reason for Gorski's

termination was poor performance.

Gorski contends that she can show pretext in all three of the permissible manners and that

a reasonable juror could conclude that Myriad's justification for her termination was a pretext for

discrimination.

Gorski contends that a reasonable juror could conclude that Myriad's stated reason for her termination is false and that discrimination actually motivated her termination. She asserts that in an industry where sales are everything – where bonuses, salaries, and promotions/demotions are all tied to objective numbers – a reasonable juror will likely find it implausible that Myria would ignore Gorski's objective sales numbers in favor of unverifiable, subjective assessments. She asserts that even if the jury finds that Ho's subjective critiques have some basis in fact, they could still conclude that they were not sufficient to warrant termination when she was performing better than many other sales persons who were not terminated. She notes that by the end of the corrective action period she was ranked 24th out of 87 salespersons nationally and was ranked third of ten in her region in terms of sales revenue. (Pl.'s Ex. R).

Gorski also relies on circumstantial evidence to show prextext, including: 1) Ho changed Gorski's objective sales requirements midway through her evaluation and Ho acknowledges he has never done that with an employee before (Ho Dep. at 285-88); 2) The only sales persons terminated that year were women over 40 and those women were also terminated based on subjective evaluations rather than objective sales numbers; 3) Other Myriad employees from outside the protected classes had far worse performance in that they did not meet their sales targets, yet were not terminated. (Pl.'s Ex. M; Ho Dep. at 142-43); and 4) Ho made comments that can be construed as reflecting a discriminatory animus as to age and gender. (Gorski Dep. at 229-30 & 334-35).

Gorski also devotes substantial time to an argument that a statistical analysis by her expert supports her position, as does evidence about trends in the pharmaceutical industry (*e.g.*

her expert opines that there is a move toward young, attractive females, the industry is actually recruiting salespersons from cheerleader squads, etc.).

Myriad, in turn, challenges Gorski's use of her expert and his statistical analysis, asserting that Gorski is improperly trying to assert a combined gender plus sex category. Myriad also takes the position that Ho's performance concerns are documented and that the Court cannot second guess its business judgment based on a plaintiff's mere personal beliefs and conjecture about the employer's evaluations.

The Court concludes that, when viewed as a whole, Gorski has submitted sufficient evidence to allow a reasonable juror to conclude that Myriad's reason for terminating Gorski is a pretext for discrimination.[6] Myriad's request for summary judgment as to Counts I and III must therefore be denied.

CONCLUSION & ORDER

For the reasons above, **IT IS ORDERED** that Defendant's Motion for Summary Judgment, seeking dismissal of Counts I and III of Plaintiff's complaint, is hereby **DENIED.**

**IT IS FURTHER ORDERED** that, based upon Plaintiff's counsel's representation at the May 31, 2007 hearing that Plaintiff wishes to voluntarily dismiss Counts II and IV, those two counts are hereby **DISMISSED** from this action.

**IT IS SO ORDERED**.

Dated: June 11, 2007

S/Sean F. Cox
SEAN F. COX
UNITED STATES DISTRICT COURT JUDGE

---

[6]The parties devoted much time to arguing about the statistical analysis of Gorski's expert. The Court notes that it would arrive at this same conclusion even without any consideration of Gorski's expert and his statistical analysis.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Theresa Goski,

      Plaintiff,

v.                                  Case No. 06-11631

Myriad Genetics, Inc.,                 Honorable Sean F. Cox

      Defendant.
_____/

## **PROOF OF SERVICE**

The undersigned certifies that the foregoing opinion and order was served upon counsel of record via the

Court's ECF System and/or U. S. Mail on June 11, 2007.

                               s/Jennifer Hernandez
                               Case Manager to
                               District Judge Sean F. Cox