UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


THERESA GORSKI,

       Plaintiff,

v.                                                                          Case No. 06-11631
                                                                            Hon. Sean F. Cox

MYRIAD GENETICS,

       Defendant.

_____

## ORDER

This matter is before the Court on Defendant's Motion in limine to exclude evidence of

alleged unlawful discrimination in Defendant's other offices.  Both parties have fully briefed the

issues.  For the following reasons, the Court **GRANTS** Defendant's Motion in limine to exclude

evidence of alleged unlawful discrimination in Defendant's other offices *to the extent Plaintiff*

*seeks to offer the testimony of Judy Frank and/or Terry Ferlita on the issue of whether they were*

*discriminated against by Defendant, on the basis of their age and/or gender*. [Motion, p.4-5].

## I.  BACKGROUND

This action arises from alleged employment discrimination on the basis of Plaintiff's

gender and age.  The underlying facts are sufficiently set forth in the Court's Order denying

Defendant's motion for summary judgment. [Doc. 39].

On June 26, 2007, Defendant filed a Motion in limine to exclude evidence of alleged

unlawful discrimination in Defendant's other offices.  Specifically, the parties dispute the

admissibility of the testimony of Judy Frank and Theresa Ferlita. Frank and Ferlita were sales

employees of Defendant that were terminated. Both are women over the age of forty. Plaintiff

argues that these terminations go to the theory of her case, that Mark Capone, the vice president

of sales, instituted a practice of discriminating on the basis of age and gender following a board

meeting in November 2004. Plaintiff alleges that she, Frank and Ferlita - three of the four oldest

female sales representatives - were all terminated the within five months of each other, following

the November 2004 board meeting. Defendant argues that this anecdotal evidence is irrelevant

and unfairly prejudicial.

## II.  ANALYSIS

As a preliminary matter, Defendant's Motion did not identify what evidence it seeks to

preclude. The parties' briefs only debated the admissibility of Frank and Ferlita's testimony.

However, neither party's brief articulated what specific testimony Frank and Ferlita intend to

offer. Frank and Ferlita were not deposed. Consequently, the Court requested supplemental

briefing and allowed the parties to submit additional case law, even after the start of trial.

Because these submissions still were not sufficient to inform the Court of precisely what

evidence was at issue, the Court requested a proffer from Plaintiff's counsel of the anticipated

testimony Plaintiff seeks to introduce from Frank and Ferlita.

Plaintiff's counsel indicated that she anticipates introducing, through Frank and Ferlita's

testimony, the date they were hired and that they were hired prior to Capone. Further, Plaintiff

seeks to introduce testimony that Frank and Ferlita were two of the four oldest female sales

associates at the company, and they were both the oldest in their respective regions. Both Frank

and Ferlita would testify that their sales numbers were good and they were getting positive

2

feedback from their supervisors.  Frank would testify that she was placed on corrective action.

Additionally, both women would testify that they were sent to a "messaging" class also attended

by Plaintiff.  Plaintiff's counsel also proffered that both Frank and Ferlita would testify that

Capone was "involved" and aware of their performance issues.  Frank intends to testify that she

was told she was "not a good fit" and she was terminated.  Ferlita will testify that she was

terminated.  Both Frank and Ferlita claim they were told that Capone was aware of the

termination and he was "on board with it."  Lastly, Plaintiff's counsel proffered that both Frank

and Ferlita would testify that they had a "sense" that from November 2004 through their

termination, the actions against them were not coming from their supervisor, but from "higher

up."

Based on the information contained in the supplemental briefs, Judy Frank worked in St.

Louis, in the "Rocky Mountain Region."  Frank was directly supervised by regional manager

Elizabeth Thompson.  Terry Ferlita worked in Tampa, in the "South Atlantic Region."  Ferlita

was directly supervised by regional manager Richard Stockdale.  Plaintiff worked in Detroit, in

the "Great Lakes Region."  Plaintiff was directly supervised by regional manager Christopher

Ho.  According to Plaintiff, although the three women reported to three different regional

managers, Capone was involved in the termination of all three women.

During his trial testimony, Capone stated that he was not a decision maker and that the

area managers made their own hiring and firing decisions.  Capone also stated that he was

available as a "coach" when area managers needed assistance.  He also conceded that while he

could veto an employment decision, he had never done so.  Capone testified that he did have

discussions with, and provided feedback to, Plaintiff's supervisor regarding her corrective action

and termination.  With respect to Frank, Capone admitted he had "discussions" related to Frank's

termination.  He did not recall whether he had discussions regarding Ferlita's termination.

Nonetheless, Capone testified that although he was aware of the corrective action and

termination situations, the decision was left to the regional manager.

To support introduction of the testimony, Plaintiff relies on *Jackson v. Quanex*

*Corporation*, 191 F.3d 647, 659-662 (6th Cir. 1999), for the proposition that "how an employer

treated others in the protected class is directly relevant to whether the employer's conduct

towards plaintiff was discriminatory." [Response, p.3].  However, *Quanex* is not helpful because

it was a hostile environment case which held that a court must look to the totality of the

circumstances with respect to a hostile environment claim.  Specifically, the court held that

discriminatory and harassing comments not made directly to the plaintiff, but to co-workers, was

admissible evidence of a hostile environment as to that plaintiff.  In *Quanex*, the court found

admissible, evidence of other acts that impacted the environment as to the plaintiff employee,

even though the specific comments were not directed to the plaintiff.  Nothing in *Quanex*

supports the proposition that where a plaintiff alleges a disparate treatment claim, she is entitled

to offer evidence in the form of testimony from other members of her protected class - who

worked in different regions and under different supervisors - who believe they were also

discriminated against.

In addition, Plaintiff directs the court to *Ercegovich v. Goodyear Tire & Rubber*

*Company*, 154 F.3d 344 (6th Cir. 1998).  In *Ercegovich*, the plaintiff alleged age discrimination in

the elimination of his position and the denial of a transfer to another position.  The plaintiff

sought to introduce evidence of discriminatory remarks made by several managers in the

defendant company.  The court outlined the analysis for the admission of discriminatory

remarks.  The court noted that the relevancy of discriminatory remarks depends, in part, on the

identity of the speaker.  Specifically, the court referred to the ability of the speaker to influence

the adverse employment decision relied on by the plaintiff.  *Id*. at 354-355.  The court also stated

that the court must "examine the substance of the discriminatory remarks in determining their

relevancy to a plaintiff's claim that an impermissible factor motivated the adverse employment

action taken against him or her."  *Id*. at 355.  Applying this analysis, the court found that

unambiguous remarks by the defendant's vice president strongly suggesting a bias against older

workers was relevant.  The court also found that similar age biased remarks by two senior

managers who reported to the vice president were relevant even though those individuals were

not decision makers for purposes of the adverse employment action taken against the plaintiff.

The court noted that "[w]hile evidence of a discriminatory atmosphere may not be conclusive

proof of discrimination against an individual plaintiff, such evidence does tend to add 'color' to

the employer's decisionmaking processes and to the influences behind the actions taken with

respect to the individual plaintiff."  *Id*. at 356 (citation omitted).

 *Ercegovich* is not helpful because it addresses only the admissibility of unambiguous

discriminatory remarks, not circumstantial testimony regarding other terminations.  In addition,

Plaintiff did not proffer that Frank or Ferlita intend to testify to any unambiguous age or gender

biased remarks such as those found admissible in *Ercegovich.*

 Plaintiff also directs the court to *Robinson v. Runyon*, 149 F.3d 507 (6th Cir. 1998).  In

*Robinson*, the plaintiff alleged a claim of race discrimination.  The court found that evidence of a

false employment application incorporating racial stereotypes circulated in the defendant

company was relevant to the plaintiff's discrimination claim.  The court held:

> In *Estes*, the court, in finding evidence of statistical disparities and racially
> discriminatory treatment of black customers relevant to the plaintiff-employee's
> individual disparate treatment case, noted that 'circumstantial proof of
> discrimination typically includes unflattering testimony about the employer's
> history and work practices-evidence which in other kinds of cases may well
> unfairly prejudice the jury against the defendant.  In discrimination cases,
> however, such background evidence may be critical for the jury's assessment of
> whether a given employer was more likely than not to have acted from an
> unlawful motive.'  *Estes*, 856 F.2d at 1103.  We agree. [The plaintiff] is permitted
> to establish credence for her argument that discrimination played a role in her
> termination by presenting evidence of the racially hostile attitudes **in her
> particular office** and racial insensitivity among **the supervisors within that
> office**.  We are guided in this determination by the reality that intentional
> discrimination is often difficult to prove without significant reliance on
> circumstantial evidence. * * * Therefore, we must be mindful not to cripple a
> plaintiff's ability to prove discrimination indirectly and circumstantially 'by
> evidentiary rulings that keep out probative evidence because of crabbed notions
> of relevance.'

*Robinson*, 149 F.3d at 513 (citing *Estes v. Dick Smith Ford, Inc*., 856 F.2d 1097, 1103 (8th Cir.

1988)(emphasis added)).  In *Robinson*, the court held that evidence of a racially hostile

atmosphere condoned by supervisors in the same office, was relevant to the proposition that the

plaintiff was treated differently on the basis of her race because it "illustrates the attitudes of

those supervisors." *Robinson*, 149 F.3d at 512.  *Robinson* is not helpful to Plaintiff because

Frank and Ferlita did not work in the same office and had different supervisors.

In *Robinson*, the court went on to distinguish its holding from the holding in *Schrand v.*

*Federal Pacific Electric Company*, 851 F.2d 152 (6th Cir. 1988), which did not allow similar

evidence.  In *Schrand*, an age discrimination case, the plaintiff introduced testimony during trial

of two fellow employees who claimed they were told their employment was terminated because

they were "too old."  The plaintiff held the same position as one of the two fellow employees,

but all three worked in different regions.  On appeal, the court held that the testimony of the

6

employee witnesses - specifically that they were told they were being terminated because they were too old - was irrelevant. The court noted that the witnesses and the plaintiff had different supervisors and that the employees worked in different regions. The court stated "[t]he fact that two employees of a national concern, working in places far from the plaintiff's place of employment, under different supervisors, were allegedly told they were being terminated because they were too old, is simply not relevant to the issue in this case." *Schrand*, 851 F.2d at 156.

The *Robinson* court distinguished its holding from the holding in *Schrand* based on the geographic separation and the different supervisors in *Schrand*. The *Robinson* court stated "[i]f as in *Schrand*, however, the racist application had been circulated in some other Postal Service location outside of Cincinnati, or even the Main Office in Cincinnati, clearly the application would be much less relevant." *Robinson*, 149 F.3d at 514.

Defendant relies on *Schrand* and the unpublished case *McLeod v. Parsons Corporation*, 73 Fed.Appx. 846 (6th Cir. 2003) to support its Motion. In *McLeod*, the plaintiff was allegedly part of a management "hit list" of individuals that were going to be fired for false reasons. The plaintiff alleged he was fired based on his disability. The court ruled that testimony regarding other lawsuits, and their outcomes, filed by other employees on the "hit list" was irrelevant and more prejudicial than probative. However, the trial court allowed the plaintiff to name the other employees who were allegedly on the "hit list" and whether they suffered an adverse employment action. *Id*. at 853. Similarly in this case, both parties have introduced statistical evidence, without objection, that identifies the age and gender of other individuals terminated by Defendant.

7

In this case, the testimony Plaintiff seeks to introduce does not come from individuals

within the same city, or the same sales region. Additionally, the individuals do not work in the

same office and do not share a supervisor. Although Plaintiff alleges that Mark Capone was

"involved" in the termination of the three women, there is no indication that he was a decision

maker with respect to the terminations. The fact that Capone was "aware" of the terminations

and corrective actions is of little value considering he was the vice president of sales. Plaintiff

has not proffered sufficient evidence to establish a foundation that Capone was a decision maker

in the terminations of Plaintiff, Frank, and/or Ferlita. Accordingly, pursuant to *Schrand*, because

Plaintiff failed to establish a foundation that Frank and Ferlita were subject to the same

supervisors and worked in the same office, the testimony of Frank and Ferlita regarding whether

they were discriminated against on the basis of their age and/or gender is not relevant.

This holding is consistent with the holding of other Circuits that have addressed this

issue.[1] Plaintiff seeks to introduce anecdotal evidence of other alleged instances of

discrimination. The Fifth Circuit noted that with respect to pattern or practice disparate

treatment claims "as a general rule, anecdotal testimony of individual acts of discrimination is

admissible to bolster statistical evidence of disparate treatment." *Mooney v. Aramco Services,

Company*, 54 F.3d 1207, 1221 (5th Cir. 1995)(overruled on other grounds). However, for

---

[1]Plaintiff directs the Court to *Mendelsohn v. Sprint/United Management Company*, 466 F.3d 1223 (10th Cir. 2006), where the Tenth Circuit ruled that the testimony of fellow employees with different supervisors was relevant in an age discrimination case. However, the *Mendelsohn* court made a distinction between cases where the plaintiff alleges a company wide policy of discrimination known to all supervisors, such as a reduction in force, and a case where the plaintiff's alleged discrimination occurred as the result of a disciplinary action. *Id*. at 1227-1228. Here, Plaintiff's termination resulted after she was placed on corrective action, thus, *Mendelsohn* is not applicable. Moreover, *Mendelsohn* is not binding on this Court, and to the extent it conflicts with *Schrand*, this Court is bound to follow *Schrand*.

anecdotal evidence to be relevant, the proffered anecdotal witnesses must be sufficiently similar to the plaintiff such that "the witnesses testimony would have a tendency to show a 'standard discriminatory operating procedure' and a 'regular rather than unusual practice' of discrimination." *Id*.  In *Mooney*, the court held that "[t]estimony of anecdotal witnesses with different supervisors, working in different parts of the company" was too attenuated to meet the threshold of sufficiently similar. *Id*.  Rather than proving a company wide pattern or practice, the testimony would have been evidence of 'sporadic or isolated' occurrences. *Id*.  Similarly, in *Wyvill v. United Companies Life Ins. Co.*, 212 F.3d 296, 302 (5th Cir. 2000), the court held "[a]necdotes about other employees cannot establish that discrimination was a company's standard operating procedure unless those employees are similarly situated to the plaintiff...[t]his court and others have held that testimony from former employees who had different supervisors than the plaintiff, who worked in different parts of the employer's company, or whose terminations were removed in time from the plaintiff's termination cannot be probative of whether age was a determinative factor in the plaintiff's discharge."  The *Wyvill* court cites *Schrand, supra*, to support its holding. *Id*. at n.2.

Consistent with these cases, and particularly *Schrand*, Plaintiff has failed to demonstrate that the proffered testimony of Frank and Ferlita is relevant under FRE 401.  To the extent Plaintiff offers the testimony to establish a pattern or practice claim, Plaintiff has not demonstrated that Frank and Ferlita were similarly situated to each other or to Plaintiff because they worked in different regions, in different cities, and under different supervisors. Accordingly, Plaintiff is precluded from offering the testimony of Frank and/or Ferlita regarding whether they were discriminated against on the basis of age and/or gender in their terminations.

In addition, even if relevant, the testimony of Frank and Ferlita is precluded under FRE 403, which states "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." First, based on the proffer given by Plaintiff's counsel, most of the anticipated testimony from Ferlita and Frank is cumulative of what has already been introduced. Both parties have elicited statistical evidence, without challenge, containing the dates of hire, ages, gender, and termination of several employees, including Frank and Ferlita. Second, allowing Frank and Ferlita, who worked under different supervisors in different regions, to testify regarding the specific circumstances surrounding their terminations would require the introduction of several witnesses and evidence that is particular only to Frank and Ferlita, such as testimony from their individual supervisors, and evidence of their sales performance. This could confuse the issues and mislead the jury. Third, the Court would be forced to conduct "mini-trials" regarding Frank and Ferlita. This would amount to an undue waste of time and undue delay.

### III.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion in limine to exclude evidence of alleged unlawful discrimination in Defendant's other offices to the extent that Plaintiff seeks to offer the testimony of Judy Frank and/or Terry Ferlita regarding whether they were discriminated against on the basis of age and/or gender.

**IT IS SO ORDERED.**

**S/Sean F. Cox**
**Sean F. Cox**
**United States District Judge**

**Dated:  July 12, 2007**

10

**I hereby certify that a copy of the foregoing document was served upon counsel of record on July 12, 2007, by electronic and/or ordinary mail.**

**S/Jennifer Hernandez**
**Case Manager**